## Commonwealth *vs.* Isaiah I., a juvenile.

Suffolk. December 4, 2006. - February 9, 2007.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Search and Seizure,* Reasonable suspicion. *Firearms. Practice, Criminal,* Motion to suppress, Findings by judge.

This court vacated the allowance of the juvenile's motion to suppress evidence seized from him and remanded the case for further fact finding and other proceedings, where the judge's factual findings were inadequate and would have required this court to add facts to fill in gaps in the findings. [337-339]

Indictment found and returned in the Suffolk County Division of the Juvenile Court Department on May 21, 2003.

A pretrial motion to suppress evidence was heard by *Marjory A. German,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Ireland,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court. After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Brian M. Wiseman* for the juvenile.

*Dean A. Mazzone,* Assistant District Attorney (*Sarah B. Richardson & Kathleen Celio,* Assistant District Attorneys, with him) for the Commonwealth.

Ireland, J. A Juvenile Court judge allowed the defendant juvenile's motion to suppress a firearm that was seized from him after police searched him in a store in the Dorchester section of Boston. A single justice of this court allowed the Commonwealth's application for leave to pursue an interlocutory appeal to the Appeals Court. The Appeals Court, in an unpublished memorandum and order pursuant to its rule 1:28, *Commonwealth* v. *Isaiah I, a juvenile,* 65 Mass. App. Ct. 1111 (2005),

reversed the judge's decision, after adding facts to fill in gaps in the judge's factual findings. We granted the juvenile's application for further appellate review to determine whether the judge properly allowed his motion to suppress. Because we conclude that the judge's factual findings are inadequate and would require us to add facts in an attempt to fill in gaps in the findings, we remand the case to the judge for further factual findings, reconsideration of legal conclusions in light of the further findings, and other proceedings consistent with this opinion.

*Facts and procedural background.* The juvenile was charged as a youthful offender with unlawful possession of a firearm in 2003. He filed a motion to suppress, and the judge held an evidentiary hearing at which two Boston police detectives testified. The juvenile presented no witnesses. At the conclusion of the hearing, the judge allowed the motion in an oral order. The Commonwealth subsequently requested, and the judge issued, written findings of fact and ruling of law. Mass. R. Crim. P. 15 (b) (2), as appearing in 422 Mass. 1501 (1996). In the written decision, the judge found the following:

> "On January 30, 2004, Boston Police Officer Brian Black and Det. William Doogan[1] were driving in an unmarked cruiser in the area of Ferndale Road and Norfolk Street. As they passed Ada's Tropical Market they saw a young black male, Tyrone Green standing near the store. Another young black male [the juvenile] was standing near the store looking into the store, which at the time was open, with one hand in his pocket, moving it around. The young men were not standing together, nor were they talking with each other. Mr. Green actually lived on Norfolk Street. The officers had not received any calls for a crime about to be committed or having been committed that evening at or anywhere near the store.

> "Prior to pulling the car over the only words the officers said to one another were 'do you see what I see?' Upon stopping in front of the store, the officers got out of the car and immediately started pursuit of the two males.

---

[1]Testimony at trial was that another detective also was present in the vehicle.

The Officers never called out to the males, never attempted
to question them, never identified themselves as police
and never saw anything in their hands. [The juvenile] went
into the store, which was open and proceeded to the back
of the store near the snacks and deli. Officer Doogan
chased [the juvenile] into . . . the back of the store, where
[the juvenile] was seen with his hand near his sock. Of-
ficer Doogan never saw a weapon in or near [the juvenile's]
pocket or sock. Officer Doogan searched and cuffed [the
juvenile] never identifying himself. . .

"Based on the facts as presented, the juvenile was
merely seen looking into a window of a well lit open store.

"The officers never saw a gun, or anything that looked
like a weapon. Additionally, the officers never saw any
interaction between the two males on the street or any
movement that would lead them to believe they were
together. Nor had they ever seen these two males before.
The officers did cite that in the past, not that day nor any
definite amount of days prior, there had been purse
snatches in the 'area.' However, none was attributed to
happening in front of this store, on this block, or either of
these two males."[2]

The judge concluded that the detectives did not have reason-
able suspicion to stop the juvenile and granted the motion to
suppress.

In reversing the judge's decision, the Appeals Court stated
that some of the judge's findings were clearly erroneous as was
her ultimate legal conclusion. For example, the court noted, and
the record supports, that there was no testimony that Detective
Doogan "chased" the juvenile into the store, or that the juvenile
was seen with his hand near (rather than in) his sock.[3] The
court also stated that the judge made no finding regarding the
credibility of the detectives who testified and therefore the court

---

[2]The last two paragraphs are taken from the section of the judge's opinion
labeled "Conclusions of Law."

[3]One of the detectives testified that he walked "[v]ery quickly" into the
store behind the juvenile. The suggestion that the juvenile had his hand
"near" his sock was made by defense counsel during cross-examination.

"added uncontroverted facts to fill out the narrative." In doing so, the Appeals Court relied on the testimony of the two detectives who testified.

*Discussion.* The Commonwealth argues that the factual findings on which the motion judge based her legal conclusion are clearly erroneous. *Commonwealth* v. *Thomas,* 429 Mass. 403, 405 (1999) ("motion judge's findings of fact are binding in the absence of clear error"). The Commonwealth also argues that this court may review the record and find the support necessary to reverse the judge's decision to grant the motion to dismiss, because it is clear that the judge credited the detectives' uncontroverted testimony.[4]

Appellate courts may supplement a judge's finding of facts if the evidence is uncontroverted and undisputed and where the judge explicitly or implicitly credited the witness's testimony. *Commonwealth* v. *Alvarado,* 423 Mass. 266, 268 n.2 (1996). *Commonwealth* v. *Santiago,* 410 Mass. 737, 738 n.2 (1991). See *Commonwealth* v. *Butler,* 423 Mass. 517, 526 n.10 (1996) (appellate court considers uncontroverted testimony that "in no way contradict[s] the motion judge's findings [but] merely fill[s] out the narrative"); *Commonwealth* v. *Scott,* 52 Mass. App. Ct. 486, 492 (2001), *S.C.,* 57 Mass. App. Ct. 36 (2003) and 440 Mass. 642 (2004) (court's willingness to supplement motion judge's findings based on confidence that material "is indeed uncontroverted" and that motion judge "explicitly or implicitly credited the witness's testimony"). In addition, "[o]n a motion to suppress, '[t]he determination of the weight and credibility of the testimony is the function and responsibility of the [motion] judge who saw the witnesses, and not this court.' " *Commonwealth* v. *Yesilciman,* 406 Mass. 736, 743 (1990), quoting *Commonwealth* v. *Moon,* 380 Mass. 751, 756 (1980).

As the Appeals Court noted, some of the judge's findings of fact are clearly erroneous. In addition, some of the factual findings omit mention of related testimony so as to appear incomplete. Two examples will suffice. First, both detectives testified that there had been a string of robberies on several streets in the area, including on Norfolk Street, where they had

---

[4]Because of our decision, we need not address the parties' arguments concerning whether there was reasonable suspicion to stop the juvenile.

observed the juvenile in front of the store. They also testified that there were armed robberies, what they called "strong-armed robberies" (i.e., involving threats or actual beatings) and purse snatchings. However, the judge found only that the detectives "cited that in the past, not that day nor any definite amount of days prior, there had been purse snatches in the 'area' [and] none was attributed to happening in front of this store, on this block . . . ." Second, both detectives testified that, after they pulled their unmarked cruiser in front of the store, the juvenile entered the store and the detectives then got out of the cruiser. However, the judge's findings stated: "Upon stopping in front of the store, the officers got out of the car and immediately started pursuit of the two males. . . . [The juvenile] went into the store, which was open and proceeded to the back of the store near the snacks and deli."

These gaps in the facts are material to the issues concerning when the juvenile was seized and whether the detective had reasonable suspicion that the juvenile had a weapon. See, e.g., *Commonwealth* v. *Laureano*, 411 Mass. 708, 710 (1992) (no seizure where detectives followed defendant into public restroom); *Commonwealth* v. *Fraser*, 410 Mass. 541, 544 n.4, 545-547 (1991) (officer's safety concern justifies pat frisk; innocent factors, taken together, may amount to reasonable belief). Because the judge did not make a credibility determination of the detectives' testimony, we are in no position to tell whether she found none, some, or all of their testimony credible and thus cannot determine whether her omissions are the result of clear error, *Commonwealth* v. *Thomas*, *supra* (court accepts judge's findings of fact absent clear error), or whether she simply did not credit the testimony, *Commonwealth* v. *Scott*, *supra* (court must be confident that judge credited witness testimony).[5] Credibility determinations are for the motion judge to make. *Commonwealth* v. *Yesilciman*, *supra*. Accordingly, we conclude that the matter must be remanded to the judge for further factual findings and a reconsideration of the legal conclusions in light of those further findings.

We conclude this discussion by noting that "[a] finding of

---

[5]Given this conclusion, we need not address the juvenile's argument that there was no error in the judge's subsidiary findings.

fact is the judge's declaration that it is a fact. Usually . . . a finding of fact will be the product of the judge's deliberation and deduction on an essential, material, or relevant fact that has been put in issue." J.J. George, Judicial Opinion Writing 134 (4th ed. 2000). Findings of fact are drawn from, and consistent with, the evidence and are not merely a recitation of the evidence. *Id.* at 133. Where relevant, they reflect credibility determinations of witnesses' testimony. Findings of fact also reflect a weighing of evidence. *Id.* at 134. If a fact is based on weighing the credibility of a witness, there must be some testimony consistent with the finding. *Id.* at 154.

Findings of fact are factual deductions from the evidence, essential to the judgment in the case. *Id.* at 110, 133, 134. Such findings should be stated clearly, concisely and unequivocally, and be worded so that they are not susceptible of more than one interpretation. *Id.* at 144. A judge should rely on the facts derived from the evidence to reach the ultimate facts that resolve the case in light of applicable law. *Id.* at 151. The judge's findings as to ultimate facts should be founded on reasonable inferences that flow logically from the evidentiary facts. *Id.* at 116.

*Conclusion.* For the reasons set forth above, the order allowing the juvenile's motion to suppress is vacated, and the matter is remanded to the Juvenile Court for further factual findings, reconsideration of legal conclusions in light of the further findings, and other proceedings consistent with this opinion.

*So ordered.*