## Commonwealth *vs.* Isaiah I., a juvenile.

Suffolk. December 5, 2007. - March 18, 2008.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Cordy, & Botsford, JJ.

*Firearms. Practice, Criminal,* Motion to suppress. *Search and Seizure,* Reasonable suspicion. *Constitutional Law,* Search and seizure, Reasonable suspicion, Investigatory stop.

A Juvenile Court judge erred in allowing the juvenile's motion to suppress evidence of a firearm found in his sock, where the juvenile, who was seized when a police officer confronted him in a public store and ordered him not to move [821-823], gave the officer reasonable grounds to suspect that he was committing or about to commit a crime and to stop and pat frisk him, given that the encounter occurred in an area that had had a string of robberies, that the juvenile was peering into the store while manipulating something in his pocket, that he quickly walked into the store after he saw the officer's unmarked cruiser, and that he appeared to be concealing something in his sock while in the store [823-824].

INDICTMENT found and returned in the Suffolk County Division of the Juvenile Court Department on May 21, 2003.

Following review by this court, 448 Mass. 334 (2007), further proceedings on a pretrial motion to suppress evidence were had before *Marjory A. German,* J.

An application for leave to file an interlocutory appeal was allowed by *Greaney,* J., in the Supreme Judicial Court for the county of Suffolk.

*Dean A. Mazzone,* Assistant District Attorney (*Kathleen Celio,* Assistant District Attorney, with him) for the Commonwealth.

*Brian M. Wiseman* for the juvenile.

IRELAND, J. In *Commonwealth* v. *Isaiah I.,* 448 Mass. 334 (2007), this court vacated and remanded, for further factual findings, a Juvenile Court judge's decision to grant the juvenile's motion to suppress a firearm that was seized from him after a patfrisk in a store in the Dorchester section of Boston. On remand, the judge again granted the juvenile's motion to suppress.

A single justice of this court granted the Commonwealth's application for an interlocutory appeal. Because we conclude that the police officers had reasonable suspicion to stop and pat frisk the juvenile, we reverse the order granting the motion to suppress and remand the matter for further proceedings.

*Facts and procedural background.* In May, 2003, the juvenile was charged as a youthful offender with unlawful possession of a firearm. The judge held an evidentiary hearing on the juvenile's motion to suppress. Two Boston police detectives testified.[1] The judge granted the motion and issued written findings of fact and conclusions of law. The Commonwealth appealed. A single justice of this court granted the Commonwealth's application for leave to pursue an interlocutory appeal to the Appeals Court. The Appeals Court, in an unpublished memorandum and order pursuant to its rule 1:28, *Commonwealth* v. *Isaiah I.,* 65 Mass. App. Ct. 1111 (2005), reversed the judge's decision after adding facts "to fill in gaps in the judge's factual findings." *Commonwealth* v. *Isaiah I.,* 448 Mass 334, 335 (2007). We granted the juvenile's application for further appellate review. *Id.*

In our decision we concluded that "the judge's factual findings [were] inadequate and would require [the court] to add facts in an attempt to fill in gaps in the findings." *Id.* We stated that some facts were clearly erroneous, that some were incomplete, and that the "gaps in the facts [were] material to the issues concerning when the juvenile was seized and whether the detective [who conducted the patfrisk that yielded the illegal firearm] had reasonable suspicion that the juvenile had a weapon." *Id.* at 338. In particular, we noted that the judge made no credibility determinations and thus we could not tell "whether she found none, some, or all" of the testimony credible. *Id.* See note 4, *infra.* We remanded the case to "the judge for further factual findings and a reconsideration of the legal conclusions in light of those further findings." *Id.*

In March, 2007, the judge again issued findings of fact, conclusions of law, and an order. In the written decision, the judge found the following facts. In January, 2004, three Boston police

---

[1] A third Boston police officer was involved in the arrest, but he did not testify.

officers were driving in an unmarked car in Dorchester, investigating a string of armed robberies and purse snatchings. The police believed that these crimes were committed by black or Hispanic young adults between the ages of fourteen and twenty years. On the day the juvenile was seized, "there were no reports of any crimes taking place at this location." While stopped at an intersection, the officers observed the juvenile standing in front of a store, peering through the front window. They also saw another black male in the vicinity of the store. The officers did not know either of them. The officers noticed the juvenile manipulating something in his right front pants pocket. One officer, Detective William Doogan, concluded that the juvenile was about to rob the store and asked the other officers, "Are you seeing what I'm seeing?" The judge stated, "Based upon a 10 second glance, the officers collectively decided to stop the juvenile."

At the officers' approach, the juvenile saw the unmarked cruiser and "quickly" walked into the store. Doogan "quickly" followed the juvenile down an aisle to the rear of the store. "As the detective approached, he noticed the [juvenile] bent down towards his right foot and stated that it appeared he was placing something in his right sock." Doogan did not see the object that was placed in the sock or a bulge in the juvenile's outer clothing.[2] As Doogan approached, the juvenile stood straight up and began to reach for a bag of snack food. Doogan ordered the juvenile not to move and immediately pat frisked him and found the firearm in his sock.[3]

In her legal conclusion, the judge determined that the juvenile was stopped when Doogan decided to follow him. The judge

---

[2]The juvenile argues that the "judge did not specifically find that the [juvenile] was placing something in his sock. She found that 'the detective stated that it appeared he was placing something in his right sock.' " Even if the judge did not find that the juvenile was placing something in his sock, it was the movement near the sock along with peering into the window and manipulating something in his pocket that, through the eyes of an experienced officer, formed a basis for reasonable suspicion. See *Commonwealth* v. *De-Peiza*, 449 Mass. 367, 373 (2007), and cases cited (officers may rely on their experience and training as grounds for reasonable suspicion).

[3]The record is unclear as to the scope of the patfrisk. Doogan testified that he "reached down to . . . his sock and there was the gun," which suggests that the patfrisk might have been limited to the juvenile's right leg.

concluded that "[t]he decision to stop the [juvenile] hinges solely on his action of peering into the window of an open convenience store while at the same time placing his right hand in his pant pocket. This action alone does not amount to an objective, factual basis for reasonable suspicion that the juvenile was engaged in criminal activity." She also concluded that when Doogan pat frisked the juvenile, there was no danger, and thus the patfrisk was not justified.[4]

*Discussion.* In reviewing a motion to suppress, we adopt the motion judge's factual findings absent clear error. *Commonwealth* v. *Catanzaro*, 441 Mass. 46, 50 (2004), and cases cited. We independently determine whether the judge correctly applied constitutional principles to the facts as found. *Id.*

In determining whether Doogan's actions were constitutionally permissible, we must first identify when the seizure occurred. *Commonwealth* v. *DePeiza*, 449 Mass. 367, 369 (2007). A person is seized by the police "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Commonwealth* v. *Borges*, 395 Mass. 788, 791 (1985), quoting *United States* v. *Mendenhall*, 446 U.S. 544, 554 (1980). "[N]ot every encounter between a law enforcement official and a member of the public constitutes an intrusion of constitutional dimensions requiring justification." *Commonwealth* v. *Stoute*, 422 Mass, 782, 789 (1996).

---

[4]We remanded *Commonwealth* v. *Isaiah I.*, 448 Mass. 334, 338 (2007), in part because the judge did not make credibility determinations about the officers' testimony. Here, the judge again does not explicitly state that she found the officers credible. However, the judge changed some findings and expounded on others in the separate "findings of fact" section of her decision. For example, the initial decision made no reference to the juvenile's behavior as the unmarked cruiser approached and stated, incorrectly, that the officers "immediately started pursuit of the two males." We conclude, therefore, that she implicitly found the officers' testimony credible.

It would have been helpful for the judge to state her findings and not use the words "officers stated." However inartful, we conclude that the judge did set out what she thought was credible evidence. Moreover, our conclusion is not inconsistent with her ultimate decision to grant the motion to suppress. As discussed *infra*, because the judge erroneously assumed that the juvenile was seized when Doogan formed the subjective intent to stop him, she did not discuss facts she found after that point except to state that the officer was not in fear of his safety. This is not a case where the judge made no explicit findings. See, e.g., *Commonwealth* v. *Grandison*, 433 Mass. 135, 137 (2001), and cases cited.

The judge erred when she concluded that the seizure occurred while the officers were in their car and "collectively decided to stop the juvenile." Any subjective intent the officers may have had to stop the juvenile is irrelevant because, while the intent remained uncommunicated, it could have no impact on whether the juvenile felt free to leave. *Commonwealth* v. *Barros*, 435 Mass. 171, 174-175 (2001). Therefore, the juvenile was not seized when the officers, sitting in the car, subjectively decided to stop him.

Nor was the juvenile seized when Doogan decided to follow him into the store. Pursuit by the police becomes a seizure when it "would communicate[] to the reasonable person an attempt to capture or otherwise intrude on [an individual's] freedom of movement." *Commonwealth* v. *Watson*, 430 Mass. 725, 731 (2000), quoting *Commonwealth* v. *Williams*, 422 Mass. 111, 116 (1996). However, when the police merely engage in "[f]ollowing or observing someone without more, such as using a siren or lights, attempting to block or control an individual's path, direction, or speed, or commanding the individual to halt, [it] is not pursuit." *Commonwealth* v. *Watson, supra*. See *Commonwealth* v. *Sykes*, 449 Mass. 308, 313 (2007) (no pursuit where defendant was on bicycle and officers merely followed him in their unmarked cruiser without "blue lights, flashers, or sirens"); *Commonwealth* v. *Grandison*, 433 Mass. 135, 138 (2001) (following defendant for purpose of surveillance is not pursuit; seizure occurred when officer commanded the defendant to stop); *Commonwealth* v. *Rock*, 429 Mass. 609, 611-612 (1999) (no seizure where officers in unmarked cruiser followed defendant without lights or siren, then left cruiser, and asked defendant to speak with them). Therefore, the fact that Doogan followed the juvenile into a public store, where he had every right to be, did not constitute a seizure. *Commonwealth* v. *Laureano*, 411 Mass. 708, 710 (1992) (no seizure where "detectives . . . followed the defendant into a public rest room where they both had a right to be").

The juvenile was seized, however, when Doogan confronted him in the store and ordered him not to move, because a reasonable person would have believed that he was not free to leave. See *Commonwealth* v. *DePeiza, supra* at 371 (defendant seized

when officers announced their intention to frisk him); *Commonwealth* v. *Barros*, *supra* at 176 (seizure where officer said, "Hey you. I wanna talk to you. Come here"). "Such an investigatory stop is constitutionally justified if it is conducted on reasonable suspicion that the person seized has committed, is committing, or is about to commit a crime." *Commonwealth* v. *DePeiza*, *supra*. "Reasonable suspicion may not be based on good faith or a hunch, but on specific, articulable facts and inferences that follow from the officer's experience." *Commonwealth* v. *Grandison*, *supra* at 139. "Seemingly innocent activities taken together can give rise to reasonable suspicion justifying a threshold inquiry." *Commonwealth* v. *Watson*, *supra* at 729.

The juvenile argues that the facts leading up to the seizure did not provide sufficient reasonable suspicion for the officers to stop and search him and that the "linchpin of the Commonwealth's argument is that all of [the juvenile's] innocent activity occurred in a high crime area." We disagree.

An officer does not have to exclude all the possible innocent explanations for the facts in order to form a reasonable suspicion. *Commonwealth* v. *Deramo*, 436 Mass. 40, 44 (2002). We do not examine each fact known to Doogan at the time of the stop in isolation; instead we view the "facts and inferences underlying the officer's suspicion . . . as a whole when assessing the reasonableness of his acts." *Commonwealth* v. *Thibeau*, 384 Mass. 762, 764 (1981). Here, considering the events outside the store (in an area that had had a string of robberies) — the juvenile's peering into the store, manipulating something in his pocket, and quickly walking into the store after seeing the unmarked cruiser — in conjunction with his apparent attempt to conceal something in his sock while in the store, we conclude that the juvenile's behavior gave Doogan reasonable grounds to suspect that he was committing or about to commit a crime.[5] See *Commonwealth* v. *DePeiza*, *supra* at 372-373 (encounter with defendant in high crime setting together with other factors

---

[5]The juvenile claims that when the innocent activity outside the store is paired with Doogan's observations in the store there is insufficient reasonable suspicion to warrant a stop because "if there is no reason to believe the [juvenile] is casing the store for an armed robbery there is nothing sinister in the [juvenile] appearing to put something in his sock."

supported officer's reasonable suspicion defendant was committing a crime); *Commonwealth* v. *Sykes, supra* at 315 (defendant's clenching his waistband while running away from police gave rise to reasonable suspicion of criminal activity); *Commonwealth* v. *Fisher*, 54 Mass. App. Ct. 41, 46-47 (2002) ("the defendant's motion to his waist, notwithstanding its inherent ambiguity, tipped the scales in favor of reasonable belief when aggregated with the other nondispositive but relevant factors").

A patfrisk is constitutionally justified when an officer reasonably fears for his own safety or the safety of the public, *Commonwealth* v. *DePeiza, supra* at 374, and cases cited, or when the police officer reasonably believes that the individual is armed and dangerous. *Commonwealth* v. *Wilson*, 441 Mass. 390, 394 (2004), and cases cited. A combination of seemingly innocent facts taken together may provide the requisite reasonable belief necessary to support a patfrisk. *Commonwealth* v. *Fraser*, 410 Mass. 541, 545 (1991) (these factors — encounter occurred in "high crime area," radio call describing man with gun, defendant was "ben[t] down behind the truck 'as though to pick something up,' " and defendant kept his hands in his pockets — were sufficient to justify pat-down).

Here, contrary to the judge's conclusion, it was not necessary for Doogan to testify that he feared for his or the public's safety. That fear can be inferred from the circumstances. *Commonwealth* v. *Va Meng Joe*, 425 Mass. 99, 102 n.7 (1997). Based on the juvenile's actions both inside and outside the store, Doogan drew the reasonable inference that the juvenile had a weapon and thus was dangerous. Therefore he was justified in conducting a patfrisk. See *Commonwealth* v. *Fraser, supra* at 546-547.

*Conclusion.* For the reasons set forth above, the order allowing the motion to suppress is reversed. The case is remanded to the Juvenile Court for further proceedings.

*So ordered.*