NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-626

COMMONWEALTH

vs.

KELSCO PORTER.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

On December 5, 2024, the defendant entered a conditional plea of guilty to one count of possession of a firearm without an FID card, in violation of G. L. c. 269, § 10 (h) (1); and one count of possession of ammunition without an FID card, in violation of G. L. c. 269, § 10 (h) (1).[1]  On appeal, the defendant challenges the denial of his motion to suppress, following an evidentiary hearing.  He argues that the motion judge erred in rejecting his argument that the police lacked a lawful basis to order him to step out of his car, and in denying the motion.  Gaps in the motion judge's findings make it unclear

_____

[1] A District Court judge sentenced the defendant to an eighteen-month suspended sentence with two years of probation.

whether he credited portions of the officer's testimony that are critical to determining whether the exit order was reasonable. See Commonwealth v. Demos D., 497 Mass. 78, 79 (2026). Since "[c]redibility determinations are for the motion judge to make," Commonwealth v. Isaiah I., 448 Mass. 334, 338 (2007), S.C., 450 Mass. 818 (2008), we conclude that the matter must be remanded to the District Court for further findings and conclusions.

Background. The following facts are derived from the motion judge's findings of fact on the defendant's motion to suppress, and from undisputed evidence in the record that he implicitly credited. See Commonwealth v. Tremblay, 480 Mass. 645, 654-655 (2018); Commonwealth v. Jones-Pannell, 472 Mass. 429, 436 (2015).[2]

At around 12:27 A.M. on September 1, 2023, Officer Nicholas Stoner, a one-year veteran of the Barnstable Police Department who testified at the hearing on the motion to suppress, was in a marked police cruiser in "the area of Hiramar and Fresh Holes Road" in Hyannis. That area was subject to "numerous calls for weapons and domestic violations" for the Barnstable Police

---

[2] The motion judge made oral findings of facts at the conclusion of the evidentiary hearing. He began by stating, "based on the credible evidence that I've had, I'm going to make the following findings of fact." Compare Demos D., 497 Mass. at 88 (although judge prefaced her findings of fact "by stating that her findings were derived from 'the credible evidence,'" it was unclear what testimony she credited).

2

department.  Officer Stoner saw a "gray blue" Honda Accord turning left from Walton Avenue onto Route 28.  He ran a license plate query of the car and learned that the owner of the car had a suspended license.  He also saw that the car's windows were "extremely dark and tinted," and therefore he could not see the car's driver.  As a result, he decided to stop the car and activated his blue lights.  The car stopped promptly by a bank and the Cape Cod Mall.

Initially, Officer Stoner was concerned because the car's darkly tinted windows were rolled up.  The defendant lowered the front driver's side window one-half to three-quarters of the way down as Officer Stoner approached the vehicle.  He saw a large amount of smoke billow out of the window.  He also saw a woman in the passenger's seat who had what he believed was a marijuana grinder on her lap.  Officer Stoner noted that the smoke smelled like marijuana.  Officer Stoner asked the defendant for his license, which he provided.  Officer Stoner did not suspect that the defendant was under the influence of marijuana.

Throughout this interaction, Officer Stoner saw that the defendant was "moving and shifting throughout . . . the driver's seat with his hand draped over . . . the center console."  The defendant was constantly shifting and repositioning his body

toward the center console.[3] Officer Stoner asked the defendant whose car it was and the defendant stated that it was his uncle's car.

At that point, a second police officer arrived at the scene. Officer Stoner then ordered the defendant to step out of the car and the defendant promptly complied. Indeed, Officer Stoner testified that the defendant was "very compliant" and "relaxed" when he stepped out of the car. Officer Stoner testified that he ordered the defendant to step out of the car because he believed that the defendant was focused on the center console and that he could access a weapon from the center console.[4]

---

[3] The motion judge characterized this testimony as follows: "the officer testified at that -- those actions that he saw he had concern with of that area of the center console, and the moving and shaking." The motion judge did not state whether he found that the officer's testimony was credible or that his concern was reasonable, and if so why.

During his factual findings, the motion judge twice characterized the defendant's movement as "shaking." Officer Stoner did not testify to that effect. Likewise, the motion judge found that the defendant was "moving . . . his hands . . . in and around the center console area." Again, Officer Stoner did not testify to that effect.

[4] The motion judge did not refer to this explanation in his oral findings of fact. See note 3, supra.

Officer Stoner then asked the defendant whether there was anything in the car.[5] The defendant repeated that the car belonged to his uncle, and stated that he believed that his uncle had a gun. The second officer then asked the passenger to step out of the car, and Officer Stoner asked both the passenger and the defendant to sit on a nearby curb. They complied.

Officer Stoner asked the defendant for permission to search the car, and the defendant consented. Officer Stoner opened the front driver's side door, and then opened the center console, where he found a gun.

Officer Stoner then asked the defendant and the passenger who owned the gun. After neither the defendant nor the passenger answered, Officer Stoner told them both that because neither was old enough to have a firearm license (Officer Stoner confirmed with dispatch that the defendant did not have a firearm license) he would arrest and charge them both for possession of the firearm. The defendant eventually said that the gun was his. Officer Stoner then arrested the defendant. The car's owner arrived and gave the female passenger permission to drive it away.

---

[5] Officer Stoner testified that this was a routine question asked by police officers, especially when the officer is in fear for their safety. The motion judge did not refer to this explanation in his oral findings of fact.

Discussion.  "In reviewing a decision on a motion to suppress, 'we accept the judge's subsidiary findings of fact absent clear error "but conduct an independent review of [the] ultimate findings and conclusions of law."'"  Commonwealth v. Ramos, 470 Mass. 740, 742 (2015), quoting Commonwealth v. Colon, 449 Mass. 207, 214, cert. denied, 552 U.S. 1079 (2007).

In support of his motion to suppress, the defendant argued that Officer Stoner did not have reasonable grounds to be concerned for his safety and therefore, both his exit order and his subsequent search of the car's center console were unlawful.  Therefore, the motion judge was obligated to determine whether the exit order was lawful.

An exit order is justified during a traffic stop where "a reasonably prudent [person] in the [officer's] position would be warranted in the belief that the safety of the police or that of other persons was in danger."  Commonwealth v. Torres-Pagan, 484 Mass. 34, 37 (2020), quoting Commonwealth v. Washington, 449 Mass. 476, 482 (2007).  "Where an officer has issued an exit order based on safety concerns, the officer may conduct a reasonable search for weapons in the absence of probable cause to arrest."  Commonwealth v. Amado, 474 Mass. 147, 152 (2016).  Our inquiry is an objective one in which we consider the totality of the circumstances, including an officer's training and experience.  Commonwealth v. Monell, 99 Mass. App. Ct. 487,

6

489 (2021). "Although it does not take much for a police officer to establish a reasonable basis to justify an exit order or search based on safety concerns, the mere fact that an officer observes a driver's nervousness and fidgeting, without more, does not warrant a belief that the safety of the officers or others is threatened" (quotations and citations omitted). Commonwealth v. Barreto, 483 Mass. 716, 723 (2019).

In order to address the defendant's argument, we need to begin with the motion judge's factual findings bearing on whether Officer Stoner had a reasonable fear for his safety. The motion judge did not make a clear finding about this issue. The closest he came was to state that "the officer testified at that -- those actions that he saw he had concern with of that area of the center console, and the moving and shaking." As noted above, Officer Stoner never testified that the defendant was shaking. Nor did he testify that the defendant moved his hands. We add that though the motion judge found that Officer Stoner "had concern," it is unclear on this record exactly what the judge thought Officer Stoner's concern was.

Moreover, assuming that the motion judge's brief statement preceding his oral findings of fact -- "based on the credible evidence that I've h[ear]d" -- meant that he found all of Officer Stoner's testimony credible, and that he interpreted Officer Stoner's "concern" as a concern for his safety, he did

not state whether he found Officer Stoner's "concern" reasonable, and if so, why. See Barreto, 483 Mass. at 722 ("In determining whether an exit order was justified based upon safety concerns, we ask whether a reasonably prudent [person] in the [officer's] position would be warranted in the belief that the safety of the police or that of other persons was in danger" [quotation and citation omitted]).[6] The motion judge's written decision reads in full:

> "The Court after reading facts found into the record on date of hearing finds that there is sufficient cause for officer to search the area of the center console and driver's side area based on actions of the defendant. Also, defendant's statement as to ownership of gun was made voluntarily. Based on above, defendant's motion to suppress is denied."

In his decision, the judge did not make an explicit finding that Officer Stoner's exit order was justified and the basis underlying that conclusion. Instead, his endorsement decision begins its legal analysis after Officer Stoner had ordered the defendant out of the car by discussing the legality of the

_____

[6] The Supreme Judicial Court recently noted, "We have previously urged judges to avoid simply recounting the testimony of the witnesses; judges should instead state the facts they find occurred." Commonwealth v. Mosso, 496 Mass. 768, 771 n.5 (2025). See Isaiah I., 448 Mass. at 339 ("Findings of fact are drawn from, and consistent with, the evidence and are not merely a recitation of the evidence"). See also Tremblay, 480 Mass. at 661 ("what is needed from a trial court judge are credibility determinations as to pertinent matters, and concise, clear, and adequate findings of fact").

8

search, which presumably was based, at least in part, on the defendant's admission, after he had been ordered out of the car, that his uncle owned a gun.

Given the gaps in the motion judge's findings, we are unable to discern whether he concluded that Officer Stoner ordered the defendant to step out of the car because he reasonably feared for his safety, and if so what specific and articulable facts supported that finding. "[O]n a motion to suppress, [t]he determination of the weight and credibility of the testimony is the function and responsibility of the [motion] judge who saw the witnesses, and not this court" (quotation and citation omitted). Isaiah I., 448 Mass. at 337. Were we to attempt to resolve ambiguity where, as here, it is unclear what testimony the motion judge credited, we would risk violating our "long-standing jurisprudence" that it is "[im]proper for an appellate court to engage in what amounts to independent fact finding in order to reach a conclusion of law that is contrary to that of a motion judge who has seen and heard the witnesses, and made determinations regarding the weight and credibility of their testimony." Jones-Pannell, 472 Mass. at 438. Under these circumstances, a remand is in order.

Conclusion. The order denying the defendant's motion to suppress is vacated, and the matter is remanded to the District

Court for further findings and conclusions consistent with this memorandum and order.

So ordered.

By the Court (Meade,
  Desmond & Wood, JJ.[7]),

*Paul Little*

Clerk

Entered:  February 12, 2026.

---

[7] The panelists are listed in order of seniority.