NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-342                                        Appeals Court

COMMONWEALTH vs. SCOTT E. FIELDING.

No. 18-P-342.

Dukes.      November 13, 2018. - January 29, 2019.

Present: Milkey, Henry, & Englander, JJ.


Open and Gross Lewdness and Lascivious Behavior.
    Identification. Social Media. Evidence, Photograph,
    Authentication, Identification. Due Process of Law,
    Identification. Practice, Criminal, Identification of
    defendant in courtroom.




    Complaint received and sworn to in the Edgartown Division
of the District Court Department on May 16, 2016.

    The case was tried before J. Thomas Kirkman, J.


    Darla J. Mondou for the defendant.
    Elizabeth M. Carey, Assistant District Attorney, for the
Commonwealth.


    MILKEY, J.  A District Court jury convicted the defendant

of open and gross lewdness based on testimony that he had

masturbated in front of a woman (victim) in a health club sauna

in Tisbury.  The principal defense at trial was

misidentification.  On appeal, the defendant challenges the admission at trial of a photograph of a man that the victim identified as the perpetrator the day after the incident, as well as the victim's in-court identification of the defendant. Discerning no error, we affirm.

Background.[1]  1.  The incident.  On May 2, 2016, at approximately 6:00 P.M., the victim was swimming laps at the health club's pool.  A man whom she had not before met appeared at the shallow end of the pool and began talking to her.  The victim continued her workout but would pause to converse with him in between her laps.  The man introduced himself to the victim as "Scott," and the two interacted in the pool for approximately fifteen minutes.

After the victim completed her swimming, she and the man she knew as "Scott" went into the hot tub, where they sat close to each other and chatted some more.  They then each expressed

---

[1] Some of the evidentiary issues were resolved based on the defendant's motion to suppress, on which the judge held an evidentiary hearing.  Given that what happened during the victim's reporting of the incident lay at the heart of the motion to suppress, the victim provided far more detail about that issue during the motion hearing than she did at trial.  Her testimony about the events otherwise was consistent.  The description of the victim's reporting of the incident is drawn from the oral findings that the judge made from the bench at the conclusion of the motion hearing, supplemented slightly by testimony at that hearing that the judge "explicitly or implicitly credited."  Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015), quoting Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007), S.C., 450 Mass. 818 (2008).

an interest in going into the sauna.  When the victim arrived at the sauna, "Scott" was already inside with the light off.  The victim turned on the light and entered the sauna, and the two conversed some more, bringing their total interaction to about thirty minutes long.  The victim testified that she was "[o]ne hundred percent certain" the person inside the sauna was the same man from the pool and hot tub.  After chatting with "Scott" for several minutes, the victim heard a "scratching" sound from where he was sitting, and as she got up to leave the sauna, he asked her, "[D]o you want to look?"  She turned and observed the man stroking his genitalia, which shocked and angered her.

2.  <u>The reporting of the incident</u>.  The following day, the victim went to a sexual assault crisis center to report what had happened.  She then reported it to the police.  That same day, she returned to the health club for a yoga class, where she told her instructor that something had occurred the day before that might make it difficult to get through class.  The yoga instructor convinced her to report whatever had happened to club personnel, and the victim did so after class.  While the victim was relaying the incident to the receptionist, the yoga instructor came up to the victim and listened to her description of the man.  According to the victim, the yoga instructor then interjected "that she thought she knew him because [a man of similar description] had approached her and her daughter."

Then, on the club's computer, the yoga instructor located a photograph of the man she was thinking of on the social media Web site known as "Facebook." She showed that photograph to the victim, who identified the man depicted there as the one who first had approached her in the pool and later had masturbated in front of her in the sauna.

3. <u>The video surveillance evidence</u>. Some areas of the building in which the health club was located were monitored by a video surveillance system.[2] A still image from footage recorded on the evening of the incident, time stamped at 6:35 P.M., showed someone apparently resembling the defendant exiting the health club.[3]

---

[2] The judge held a voir dire prior to trial with the club manager who maintained the video system, as well as the police officer who went to the club to review the surveillance footage. The purpose of the voir dire was to assess the defendant's argument that the Commonwealth could not authenticate the video still taken from the surveillance footage that it wanted to introduce at trial. We need not review the facts relevant to the authentication of the video still, because the defendant no longer presses that claim on appeal.

[3] A police witness testified at trial that when the defendant was arrested, he was wearing "very bright orange head phones" and carrying a black backpack. Photographs of these items were admitted without objection. In closing, the Commonwealth pointed to the still image from the video surveillance, which was entered as exhibit two at trial, and highlighted that the man in the photograph was "wearing the orange headphones with the black backpack." The Commonwealth noted that the jurors would be able to examine the still image during their deliberations and see that the man was wearing "the very two things [the defendant] was wearing when he was

4. <u>The photographic array</u>.[4]  Nine months after the incident, the police showed the victim a photographic array, which consisted of five photographs they showed to her serially. She identified the photograph of the defendant as the person who had masturbated in front of her.

5. <u>Pretrial motions</u>.  Prior to trial, the defendant filed a motion to suppress the photograph that the yoga instructor had found on Facebook (Facebook photo), the photographic array, and any in-court identification.  Following an evidentiary hearing, the judge made findings from the bench.  Subsequently, he allowed the motion to suppress the photographic array on the grounds that it was done so long after the incident and did not comply with approved photographic array procedures in various respects.  However, the judge denied the motion to suppress with respect to the Facebook photo and any in-court identification.

Immediately prior to trial, the defendant moved in limine to exclude the Facebook photo on the ground that the Commonwealth could not authenticate it.  The judge tabled a ruling on that motion until he had a chance to review the case

---

apprehended by the police."

[4] As noted <u>infra</u>, the photographic array was suppressed and therefore was not admitted or referenced at trial.  The facts about it are drawn from the findings the judge made at the motion to suppress hearing.  The propriety of the order suppressing the photographic array is not before us.

law and hear the trial evidence.  The defendant also moved -- again -- to preclude the victim from making an in-court identification.  The judge announced that he was "going to deny [that] motion at this point based on [his] earlier ruling."[5]

6.  <u>The use of the identification evidence at trial</u>. During the trial, the Facebook photo -- scrubbed of any text or other potential indicator of its provenance -- and one of the surveillance stills were admitted over the defendant's objection.  The victim testified that the Facebook photo was shown to her the day after the incident and that she at that time identified the person shown there as the perpetrator.  The victim also was allowed to identify the defendant as the perpetrator in court, again over the defendant's objection.  She testified that she was "[o]ne hundred percent certain" of that identification.  After being given a jury instruction on identification that closely hued to the one set forth in <u>Commonwealth</u> v. <u>Gomes</u>, 470 Mass. 352, 379-388 (2015) (Appendix), the jury convicted the defendant.

---

[5] In addition, the defendant moved in limine to exclude any still photograph from the surveillance video because the Commonwealth would be unable to authenticate it, and because of the result of an alleged discovery violation.  After holding a voir dire of two witnesses with regard to the surveillance still, the judge appeared to indicate that he was inclined to allow such an exhibit in evidence, and in any event, he did so at trial.  On appeal, the defendant has not renewed his argument that the surveillance still was inadequately authenticated.

Discussion. 1. The Facebook photo. The defendant argues that the judge abused his discretion in concluding that the Commonwealth had authenticated the Facebook photo adequately. We disagree. To establish authentication, the Commonwealth was required to show "that the item in question is what the proponent claims it to be." Commonwealth v. Purdy, 459 Mass. 442, 447 (2011). See Mass. G. Evid. § 901(a) (2018). Notably, the Commonwealth offered the Facebook photo only as a photograph that the yoga instructor had shown the victim, not as a photograph that had been displayed on the defendant's Facebook page. In addition, neither the victim nor any other witness identified the person shown in the Facebook photo as the defendant (leaving that issue instead to the jury). With the victim having testified that the Facebook photo was the one shown to her, nothing more was required to authenticate it.

The defendant also argues that the victim's being shown the Facebook photo by the yoga instructor was so suggestive an identification procedure that the judge erred in denying the motion to suppress it. The defendant points out that even though the victim's exposure to the Facebook photo involved no State action, the case law recognizes that it still could be excluded under common-law principles of fairness. See Commonwealth v. Jones, 423 Mass. 99, 109 (1996). As the Supreme Judicial Court recently clarified, appellate review in this

context is limited to whether the judge abused his discretion in determining whether the probative value of the relevant evidence was substantially outweighed by unfair prejudice. Commonwealth v. Johnson, 473 Mass. 594, 600-602 (2016).

Applying that standard of review, we have little trouble affirming the judge's decision. This is not a case where the eyewitness and the defendant had only fleeting contact. Although their total time of interaction was only approximately thirty minutes, the nature of their interaction provided the victim with a solid basis for focusing on, and remembering, the appearance of the person with whom she had been conversing one-on-one in the pool, hot tub, and sauna. Furthermore, the yoga instructor's presenting the Facebook photo as an individual with the same description who recently had approached her and her daughter was not particularly conducive to misidentification. Unlike a situation in which an eyewitness is presented with a showup of someone already taken into police custody, the yoga instructor's showing the victim the Facebook photo was not particularly suggestive. We are confident that the judge's decision to allow the victim to testify about her pretrial identification of the perpetrator in the Facebook photo did not constitute "'a clear error of judgment in weighing' the factors relevant to the decision such that the decision [fell] outside the range of reasonable alternatives" (citation omitted). L.L.

v. Commonwealth, 470 Mass. 169, 185 n.27 (2014) (defining abuse of discretion standard).

2. The in-court identification. The defendant also argues that the judge erred in allowing the victim to identify him in court. The primary ground on which he presses this argument is that any in-court identification was unduly tainted by the yoga instructor's having shown the victim the Facebook photo.[6] However, for the reasons set forth above, we have rejected the defendant's claim that the victim's being shown the Facebook photo had to be excluded as unduly suggestive. In addition, it is uncontested that the victim looked at the Facebook photo only briefly because she "didn't want to keep looking at it." We are confident that the victim's in-court identification was not based on her passing exposure to the Facebook photo many months before.

Although the defendant's brief includes multiple citations to Commonwealth v. Crayton, 470 Mass. 228 (2014), it does not squarely rely on the key holding there that an eyewitness's in-court identification should be precluded unless there was "good

---

[6] The defendant contends, albeit in passing, that the surveillance still also should have been excluded because it was tainted by the victim's exposure to the Facebook photo. His theory seems to be that during their investigation, the police themselves identified the defendant in the surveillance still based on his resemblance to the Facebook photo. The defendant's argument that this investigative procedure somehow tainted the surveillance still lacks any merit.

reason" for the eyewitness not having participated in a pretrial identification procedure. Id. at 241-242.[7] In any event, such an argument would be unavailing for two reasons. First, given that the victim here had such an extensive and intensive opportunity to observe the defendant, we view this as being a good reason to justify not having a pretrial identification. See id. at 242 ("there may be 'good reason' for the first identification procedure to be an in-court showup where the eyewitness was familiar with the defendant before the commission of the crime"). Second, the day after the incident, the victim did identify the person in the Facebook photo as the perpetrator, and the judge who heard the evidence taken at the motion to suppress hearing specifically found that the person shown in that photograph was the defendant. Thus, even if a pretrial identification had been required here before an in-court identification properly could be allowed, that requirement was satisfied.[8]

---

[7] The court in Crayton, 470 Mass. at 243, stated that "the burden [is] on the prosecutor to move in limine to admit [an] in-court identification of the defendant by a witness where there has been no out-of-court identification." Here, the defendant himself moved to exclude an in-court identification, first through his motion to suppress and then through his motion in limine. On appeal, he raises no issue regarding which party moved first, and in any event, as explained below, we conclude that there was an out-of-court identification here.

[8] We need not consider whether -- in assessing if Crayton was satisfied -- we could take into account the victim's

<u>Judgment affirmed</u>.

---

identification of the defendant in the photographic array procedure that was excluded at trial.