NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

22-P-550                                          Appeals Court

COMMONWEALTH vs. SALOME GIL.

No. 22-P-550.

Essex.     January 17, 2024. - April 26, 2024.

Present: Meade, Blake, & Desmond, JJ.

Assault and Battery by Means of a Dangerous Weapon. Assault and Battery. Constitutional Law, Identification, Assistance of counsel. Due Process of Law, Identification, Assistance of counsel. Evidence, Identification, Prior misconduct. Practice, Criminal, Identification of defendant in courtroom, Substitution of judge, Instructions to jury, New trial, Assistance of counsel.

Complaint received and sworn to in the Lawrence Division of the District Court Department on November 7, 2019.

The case was tried before Michael A. Uhlarik, J., and Mark A. Sullivan, J.; and a motion for a new trial also was heard by Mark A. Sullivan, J.

Alexander Conley for the defendant.
Jennifer D. Cohen, Assistant District Attorney, for the Commonwealth.

BLAKE, J. The defendant, Salome Gil, was convicted by a District Court jury of assault and battery by means of a

dangerous weapon and assault and battery.[1]  Her motion for a new

trial alleging ineffective assistance of counsel was denied

after a nonevidentiary hearing.  In this consolidated appeal,

the defendant claims that she is entitled to a new trial for

four reasons.  First, she contends that the judge erred in

allowing a witness to identify her at trial.  Second, she claims

the trial judge erred in admitting certain testimony from a

police officer.  Third, she contends that the substitution of

judges created a substantial risk of a miscarriage of justice.[2]

Finally, she claims that she received ineffective assistance of

counsel because trial counsel failed to object to the

substitution of judges, and failed to properly advise her about

the possibility of having her case continued without a finding

(CWOF), and thus the motion for a new trial was improperly

denied.  We affirm.

---

[1] The defendant was found not guilty of intimidation of a witness.  On the conviction of assault and battery by means of a dangerous weapon, she was sentenced to six months in the house of correction, thirty days to be served, with the balance suspended for eighteen months.  The committed portion of the sentence was stayed pending appeal.  On the conviction of assault and battery, she was sentenced to eighteen months' probation with certain conditions, including restitution.

[2] As will be discussed in detail infra, three District Court judges participated in this case:  one judge ruled on pretrial motions in limine on the day of trial, a second judge presided over jury empanelment, and a third judge presided over the trial.

Facts.  On November 5, 2019, Paola Sapeda lived in a four-bedroom apartment in Lawrence with her cousin, Juan Santiago, and another roommate.  (They used the fourth bedroom as a living room.)  Sapeda arrived at the apartment between 6 and 7 P.M., and found Santiago and another person drinking alcohol in the living room, which they did regularly.  Sapeda did not notice anyone else in the apartment at that time.  Sapeda went to her bedroom around 7:30 P.M., and went to bed around 10:30 P.M.  At that time, she heard music and a party in the living room.  At approximately 11:30 P.M. Sapeda awoke to the sound of a "thump" and could hear sounds like something was being dragged.  Fearing the dragging noise involved Santiago, she left her room and "really got scared" because all the lights were turned off.  Sapeda went to Santiago's room and found him unconscious, on the ground, with his pants pulled down.  She took a photograph of Santiago and sent it to family members, including Eddie Rafael Munoz, whom she asked to come to the apartment.

Munoz arrived at the apartment and tried to pick Santiago up, while Sapeda went to the living room, where the door was locked.  Someone opened the door, and Sapeda encountered a man and woman who ignored Sapeda's questions about Santiago and turned up the music.  As Sapeda turned down the music, she was confronted by the woman, who was later identified by Munoz as the defendant.  The defendant told Sapeda that she had no right

to turn down the music, that the apartment belonged to Santiago, that Santiago was sleeping, and she told Sapeda to leave the room. Sapeda told the defendant and the man to leave and if they did not, she would call 911. The defendant then "lunged" at Sapeda, pinned her against the wall, grabbed her by the hair from behind, and hit her against the corner of the door. The defendant then "stabbed" Sapeda in the head with the defendant's car keys, pulled some of her hair out, and slapped her across the face. She told Sapeda not to call 911.

After hearing Sapeda scream and call for him, Munoz arrived in the living room where he saw that the defendant had cornered Sapeda. Munoz witnessed the defendant "beating [Sapeda] . . . pulling her hair out, . . . hit[ting] her over the head with [the defendant's] key and cut[ting] [Sapeda's] head open." Munoz did not know the defendant personally, but recognized her as Salome because he "had just seen her before on videos and on [Santiago's Snapchat] stories,"[3] and in the past, he "would see her out . . . in different businesses, different bars with

---

[3] "Snapchat is a social media application [that allows users] to publish . . . video recordings . . . [and] to share text, photographs, and video recordings, collectively known as 'snaps'" (citation omitted). Commonwealth v. Carrasquillo, 489 Mass. 107, 108-109 (2022). A "story" is "shared with a larger audience [than direct snaps], remain[s] visible for up to twenty-four hours, and can be continuously replayed" (citation omitted). Id. at 109.

[Santiago]." Munoz intervened by putting himself between the defendant and Sapeda, and grabbing the defendant's hand. The defendant dropped the keys at some point during the attack, and Munoz picked them up so that the defendant could leave in her car. Munoz "was able to take [the defendant] out of the apartment, and lock[ed] the door." A wallet "that women . . . usually use" was left behind, close to Sapeda's bedroom door.

Sapeda was treated at the hospital for, among other things, a cut on her head that required staples to close it. Sapeda brought the wallet to the police station the next day; the wallet contained a Massachusetts identification card with the defendant's name on it. A warrant issued for the defendant's arrest.

Procedural background. Both the Commonwealth and the defendant filed motions in limine regarding the in-court identification of the defendant by Sapeda and Munoz. On the morning of trial, after argument, a judge (motion judge) ruled that she would not allow Sapeda to identify the defendant in court. However, she ruled that Munoz could identify the defendant in court "given that the representation is that [Munoz] knew [the defendant] before the incident, saw her, apparently, at the party, and recognized her."[4] The motion judge

---

[4] The Commonwealth represented that Munoz "is cousins with someone the defendant knows. He has seen her multiple times at

then asked about a potential resolution to the case. The defendant's attorney responded that she did not think a guilty plea was likely. The prosecutor stated that the defendant did not have a criminal record, and that she was "entitled to a CWOF," but that Sapeda had some concerns about outstanding medical bills. The motion judge then left to empanel a civil case, said that she would "hold this" case, but never returned to preside over the trial.

Approximately ninety minutes later, another judge appeared and empanelled the jury (empanelment judge). He introduced himself and said that his only role was to empanel the jury, and that once the jury were selected, the motion judge would then preside over the trial. After jury selection was completed, and the jury were sworn, the empanelment judge provided preliminary instructions to the jury. After a recess, neither the motion judge nor the empanelment judge returned to the case. A different judge presided over the remainder of the trial (trial judge). The reasons for these changes do not appear in the record. There was no objection to the substitutions of the judges.

At trial, the Commonwealth called three witnesses: Sapeda, Munoz, and Lawrence police Officer Jonathan Enriquez. On direct

---

events and parties . . . . He knows her name to be Salome . . . and he'd recognized her voice [the night of the incident]."

examination, and in violation of the motion judge's pretrial ruling, Sapeda spontaneously identified the defendant as a person she saw inside the apartment on the night of the assault.[5] The defendant objected, the trial judge struck the identification from the record, and instructed the jury "not to consider it."  The defendant's theory at trial was that she was misidentified as the person who perpetrated the crimes, and that the identification card left at the apartment was either left there at an earlier time, or was a fraudulent identification.

Discussion.  1.  Trial issues.  a.  In-court identification.  We review the ruling to permit Munoz to make an in-court identification of the defendant for an abuse of discretion.  See Commonwealth v. Dew, 478 Mass. 304, 315 (2017).  "[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made 'a clear error of judgment in weighing' the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives" (citation omitted).  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

---

[5] When Sapeda was asked on direct examination if she saw anybody else in the house, Sapeda responded, "Yes.  I headed to the living room.  The living room was locked with keys, and when I opened the door, that's when the young lady that's here came out."

Relying on Commonwealth v. Crayton, 470 Mass. 228 (2014), the defendant argues that the trial judge erred in allowing Munoz to make an in-court identification of her because, where there was no out-of-court identification procedure, there was no other good reason for its admission.  However, "there may be 'good reason' for the first identification procedure to be an in-court showup where the eyewitness was familiar with the defendant before the commission of the crime, such as where a victim testifies to a crime of domestic violence."  Id. at 242. This is so because "the witness is not identifying the defendant based solely on his or her memory of witnessing the defendant at the time of the crime," and therefore "there is little risk of misidentification arising from the in-court showup despite its suggestiveness."  Id. at 243.  The defendant bears the burden of proving there was not good reason for the in-court identification.  See id.

Here, there was no prior identification procedure, so the question is whether the defendant met her burden to prove that there was no good reason for the in-court identification procedure.  We conclude that she did not.  The defendant contends that in order for a witness to make an in-court identification under the circumstances presented here, "some kind of significant relationship between the defendant and the witness" must exist.  But this contention misreads Crayton and

its progeny.  While Crayton explained that a case involving domestic violence was the type of case where "good reason" may exist for an in-court identification, see Crayton, 470 Mass. at 242, it did not exclude all other types of cases.  To be sure, in Crayton the court was concerned with in-court identifications that were "based solely on [an eyewitness's] memory of witnessing the defendant at the time of the crime."  Id. at 243.  But this did not foreclose the possibility that good reason for an in-court identification may exist in circumstances where the identifying witness becomes more familiar with the defendant during and in the moments immediately after the commission of the crime.  See id. at 242.  Put differently, the inquiry is the degree to which "the eyewitness [is or becomes] familiar with the defendant."  Id.  Here, Munoz was familiar with the defendant before the crime (from seeing her out with Santiago and viewing her on social media), and he interacted with her during the crime, including physically placing himself in such a way as to prevent further injury to Sapeda.

Although the relationship between the defendant and Munoz was perhaps less "extensive and intensive," Commonwealth v. Fielding, 94 Mass. App. Ct. 718, 723 (2019), than the relationships at issue in domestic violence cases, see Crayton, 270 Mass. at 243, it was nonetheless sufficient to meet the "good cause" standard for these purposes.  Although Munoz

testified that he did not know the defendant, he testified that he had just seen her before on Santiago's "videos and . . . stories," and in the past, he saw her "out, . . . in different businesses, different bars with [Santiago]." Importantly, Munoz heard Sapeda yell out for help, saw that the defendant had cornered Sapeda, and witnessed the defendant punch Sapeda and pull her hair. Munoz got in the middle of the two women, and grabbed the defendant's hand to stop the attack. Eventually Munoz was able to "take" the defendant out of the apartment and lock the door. Munoz's prior familiarity with the defendant, as contemplated by Crayton, alone supports the trial judge's ruling. However, here, we have more. Munoz's interactions with the defendant during and immediately after the crime provided him with an "intensive opportunity to observe" the defendant. Fielding, 94 Mass. App. Ct. at 723. This serves as additional support for admitting the identification. Accordingly, we conclude that the judge did not abuse his discretion in permitting Munoz to identify the defendant. And although the defendant's theory at trial was misidentification, it was up to the "jury to decide what weight to give [Munoz's] identification" of her (citation omitted). Commonwealth v. Rivera, 91 Mass. App. Ct. 796, 801 (2017). In addition to Munoz's testimony, among the other evidence for the jury to consider as to whether the defendant was the perpetrator of the

crimes was the defendant's Massachusetts identification card that was found in the apartment.

Finally, the defendant's reliance on Commonwealth v. Ortiz, 487 Mass. 602 (2021), is misplaced. There, the court concluded that it was error for a police officer who engaged in one undercover drug purchase from the defendant to make an in-court identification, because there was no evidence that the identifying officer had prior knowledge of or a subsequent interaction with the defendant. Id. at 609-610. By contrast, here Munoz had familiarity with the defendant before the night of the assault, and from the assault itself, when he intervened to prevent Sapeda from being further victimized.

b. Substitution of judges. The defendant next claims that the substitution of judges was a violation of Mass. R. Crim. P. 38 (a), 387 Mass. 916 (1979) (rule 38), and thus created a substantial risk of a miscarriage of justice. We are not persuaded. Rule 38 (a) provides in pertinent part that

> "[i]f by reason of death, sickness, or other disability the judge before whom a jury trial has commenced is unable to proceed with the trial, any other judge of that court, . . . upon certifying in writing that he has familiarized himself with the record of the trial, may proceed with and finish the trial."

The purpose of this rule is to ensure that the judge making decisions about jury instructions, admission of evidence, and other such trial matters has the necessary knowledge of the

trial evidence to make informed rulings. Consistent with this purpose, the rule, by its own terms, applies only once a jury trial has commenced. A jury trial commences when jeopardy attaches, and jeopardy attaches "when the jurors are sworn" (citation omitted). Commonwealth v. Santa Maria, 97 Mass. App. Ct. 490, 497 n.11 (2020). The defendant cites to no case, and we have found none, that stands for the proposition that rule 38 applies before a jury are sworn.

With these principles in mind, we turn to the question of when the trial commenced. The jury were sworn immediately upon their empanelment, and therefore that is when the trial commenced. In arguing a violation of rule 38, the defendant claims that we must consider the three judges involved in this case on the scheduled trial date: the motion judge, the empanelment judge, and the trial judge. While the motion judge ruled on pretrial motions that went to the heart of the defense (identification), and inquired about the possibility of resolving the case before trial, she had no role in the case once the trial commenced, and therefore the motion judge is excluded from the rule 38 analysis. It is hardly unusual for judges other than the trial judge to make pretrial rulings that govern what evidence will be admissible at trial, and this poses no challenges to the efficient administration of justice, as pretrial rulings are open to reconsideration by the trial judge.

See, e.g., Commonwealth v. Gonzalez, 469 Mass. 410, 415-416 (2014) (trial judge may revisit motion judge's denial of motion to suppress); Commonwealth v. Spencer, 465 Mass. 32, 43 (2013) ("rulings on . . . motions in limine are preliminary and can be revisited as the evidence unfolds at trial").

Our analysis is therefore limited to the empanelment judge and the trial judge, both of whom were involved in this case once the trial commenced, and therefore fall directly within the ambit of rule 38. Here, there is no evidence in the record that the empanelment judge was sick or disabled, requiring his substitution under the rule. Indeed, the record suggests otherwise. The empanelment judge introduced himself to the jury venire, explained that his role would be limited to empanelling the jury, and announced that another judge would handle the trial. Following empanelment, he gave the jury preliminary instructions, and recessed the case. When the case resumed, neither the motion judge nor the empanelment judge returned. Instead, the trial judge presided over the case from the opening statements through the jury verdict. The trial judge did not certify in writing that he had familiarized himself with the record of the trial, such as it existed at that time, as provided by rule 38, nor did the defendant object.

Rule 38 does not contemplate the substitution of a judge once the jury trial begins unless the trial judge becomes

disabled from continuing (or the parties consent).  See Reporters' Notes to Rule 38, Mass. Ann. Laws Court Rules, Rules of Criminal Procedure (LexisNexis 2023-2024).  Nonetheless, because the substitution occurred before evidence was taken, the improper substitution did not intrude on the interests rule 38 is designed to protect.  Moreover, although the motion judge (who we conclude was not subject to rule 38) excluded Sapeda's identification and allowed Munoz's identification pretrial, the trial judge ruled properly on objections made as to these identifications contemporaneously as the evidence unfolded at trial.  And there was no evidence that the Commonwealth sought to exploit the change of judges.  Consistent with these facts, there was no substantial risk of a miscarriage of justice, as the defendant suffered no prejudice.

The defendant claims that she was prejudiced by the substitution of judges in two ways.  First, she claims prejudice because Sapeda identified the defendant in violation of the motion judge's pretrial ruling.  However, her objection was sustained, the identification was stricken, and the jury were instructed not to consider it.  "We presume, as we must, that a jury understand[] and follow[] limiting instructions" (citation omitted).  Commonwealth v. Martinez, 476 Mass. 186, 194 (2017). That defense counsel explicated the basis of his objection at sidebar does not change the result.  There is no reason to think

that this would have been different had the empanelment judge completed the trial. Moreover, the trial judge instructed the jury in the preliminary charge that they were "not [to] look negatively on any lawyer" for lodging an objection. He reiterated in his final instructions that the jury were "not to consider any answer that [he] struck from the record and told [them] to disregard." The jury are presumed to follow the judge's instructions. See Commonwealth v. Cheremond, 461 Mass. 397, 414 (2012).

Next the defendant claims that she was prejudiced because the trial judge was "not positioned adequately to address [Munoz's] identification testimony." Again, there is no reason to believe that the empanelment judge would have been better positioned. In any event, the trial judge was in the best position to make contemporaneous rulings on objections. For example, he overruled an objection to a question asked of Munoz regarding his familiarity with the defendant. This is evidence that the trial judge understood and was aware that Munoz's familiarity with the defendant was necessary to properly admit the in-court identification. The defendant points out that Munoz did not testify that he recognized the defendant's voice, which the prosecutor included in her proffer in connection with

the motion. While this is true,[6] Munoz did testify about his familiarity and recognition of the defendant consistent with the prosecutor's proffer. See note 4, supra. This one discrepancy does not render the in-court identification inadmissible. In fact, whether Munoz could identify the defendant's voice was hardly critical to the question of whether Munoz could identify the defendant's appearance. There was no error, let alone a substantial risk of a miscarriage of justice. See Commonwealth v. Azar, 435 Mass. 675, 687 (2002) (substantial risk of miscarriage of justice created where "we have a serious doubt whether the result of the trial might have been different" [citation omitted]).

c. Admission of testimony. The defendant claims that the trial judge's failure to strike testimony elicited from Officer Enriquez on cross-examination was error. Specifically, defense counsel elicited testimony from Enriquez about the identification information for the defendant that he listed in his police report. Defense counsel asked if "under race, [Enriquez] wrote 'black.'" Enriquez responded to defense

---

[6] We note that in arguing the motions in limine, the prosecutor represented that Munoz knew the defendant's name and would recognize her voice. At the trial, Munoz testified that he did not hear the defendant's voice on the night of the assault, except when she said she did not want to leave. He was not asked whether he knew the defendant's name or would recognize her voice.

counsel's question as follows: "So I didn't -- So, that -- She was already in our in-house system, which is entered -- may have been entered by someone else. I don't know who entered it, but she was already in there. We've had either some sort of other involvement. I did not put the race in there." Defense counsel's motion to strike the answer was denied.

"Questions of admissibility, probative value, and unfair prejudice are left to the sound discretion of the trial judge, and will not be overturned absent clear error." Commonwealth v. Philbrook, 475 Mass. 20, 26 (2016). Although the defendant suggests Enriquez's testimony was unresponsive to the question asked, we note that Enriquez was asked whether he wrote "Black" under race, and he responded that her race was already in the "system." This answer explained why it was inaccurate to say that Enriquez filled in the race information in the police report.[7] However, even if the answer was not responsive, it may otherwise be admissible. See Commonwealth v. Errington, 390 Mass. 875, 879 (1984). The defense at trial was misidentification. This evidence went directly to that defense -- whether the correct person was charged with the crime. Indeed, by challenging Enriquez's good faith actions in

---

[7] We observe that the choice of the term "our in-house system" was better left unsaid, or could have been put differently.

investigating the assault, "defense counsel invited a fuller explanation' of Enriquez's reasons for charging the defendant (citation omitted).  Commonwealth v. Harris, 481 Mass. 767, 782-783 (2019).

Additionally, there are many reasons why someone's information may be in the "system."  See Commonwealth v. Martin, 447 Mass. 274, 286 (2006) (no error to show mugshot where necessary for identification, because there was "nothing to suggest that it was taken in connection with an arrest rather than in relation to an application for a firearm, a taxicab license, or any other police business").  The testimony did not imply any past criminal action of the defendant and therefore it did not constitute prior bad act evidence.  See Commonwealth v. Veiovis, 477 Mass. 472, 481-482 (2017).  See also Mass. G. Evid. § 404(b) (2024).

Finally, the defendant did not meet her burden to prove that she suffered prejudice based on this evidence.  See Commonwealth v. Grier, 490 Mass. 455, 476 (2022).  The testimony was not repeated, and the Commonwealth did not mention the testimony in its closing argument.  See id. at 477-478. Moreover, experienced defense counsel did not request a limiting instruction, suggesting that she did not want to call further attention to this testimony.  See Commonwealth v. Lao, 460 Mass. 12, 21 (2011).  And the jury's acquittal of the defendant on one

charge suggests that they were not improperly influenced by this testimony.  See Commonwealth v. Sosnowski, 43 Mass. App. Ct. 367, 372 (1997).

2.  Motion for a new trial.  The defendant claims that her trial counsel provided ineffective assistance because she failed to properly advise the defendant about the possibility of a CWOF.[8]  A motion for new trial may be granted only "if it appears that justice may not have been done."  Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001).  Such motions are committed to the sound discretion of the judge, Commonwealth v. Moore, 408 Mass. 117, 125 (1990), and "are granted only in extraordinary circumstances," Commonwealth v. Comita, 441 Mass. 86, 93 (2004).  "Reversal for abuse of discretion is particularly rare where, [as here] the judge acting on the motion was also the trial judge" (citation omitted). Commonwealth v. Prado, 94 Mass. App. Ct. 253, 255 (2018).  When

---

[8] In a footnote in her brief, the defendant also contends that trial counsel's failure to object to the substitution of judges was ineffective assistance.  As to the latter claim, the Commonwealth argues that the defendant did not preserve this claim "as the issue was not properly briefed and is only referenced in a footnote."  We agree with the Commonwealth that this does not rise to the level of appellate argument under Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019), and thus we need not consider it.  See Commonwealth v. Minon, 102 Mass. App. Ct. 244, 250 (2023).  However, even if we considered the merits of this claim, the defendant would fare no better for the reasons addressed supra.

a motion for a new trial is based on ineffective assistance of counsel, the defendant must show that the behavior of counsel fell measurably below that of an ordinary, fallible lawyer and that such failing "likely deprived the defendant of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). See Commonwealth v. Millien, 474 Mass. 417, 432 (2016) (second prong of ineffective assistance test met if there is substantial risk of miscarriage of justice arising from counsel's failure).

The record does not support the defendant's contention that she received ineffective assistance because trial counsel failed to properly advise her about the possibility of a CWOF. While trial counsel was required to communicate any formal plea offer to her client, see Commonwealth v. Marinho, 464 Mass. 115, 127 (2013), no such offer was made here. In response to the motion judge's inquiry about a potential resolution to the case, the prosecutor stated that the defendant "doesn't have a Board of Probation record, so, she is certainly entitled to a CWOF. I think the victim's main concern is she's had some outstanding medical bills, and just wants her held accountable."[9] This was

---

[9] It is true that the crime of assault and battery by means of a dangerous weapon did not carry a mandatory minimum sentence, see G. L. c. 265, § 15A (b), and that the defendant could request a CWOF, even if the Commonwealth did not agree to this disposition. See G. L. c. 278, § 18.

not a formal plea offer, as confirmed by the prosecutor's statement at the sentencing hearing that she "did not offer a CWOF in this case." More importantly, as discussed infra, there is no reasonable probability that the defendant would have accepted a plea offer that required her to admit to sufficient facts. This is particularly true where the defendant pursued a vigorous misidentification defense at trial.

In support of her motion for a new trial, the defendant filed an affidavit from, among others, her trial attorney. Trial counsel affirmed that shortly after meeting with the defendant for the first time, she discussed "the possibility of a plea, explained the types of pleas, including [CWOF], probation and restitution." As it got closer to the time of trial, trial counsel explained that she "did not spend as much time as [she] usually would explaining the nuances of a [CWOF], or of a felony conviction to [the defendant]. [Trial counsel] was more focused on the trial." Trial counsel observed that the defendant "had concerns regarding collateral consequences and restitution. [Trial counsel] could not answer all of [the defendant's] questions relative to if a CWOF would impact her school and her career." As the affidavits of trial counsel and of the defendant confirm, the defendant had never met Munoz and therefore they believed the defense of misidentification was strong. Although ultimately the defendant was convicted of some

of the charges, Sapeda was not permitted to identify her at trial, Munoz's identification of the defendant was aggressively challenged, and the jury were provided alternative theories about the identification card left at the apartment.  That this approach was unsuccessful does not make it manifestly unreasonable.  See Commonwealth v. Watson, 455 Mass. 246, 258 (2009).

On the day of trial, trial counsel informed the motion judge that she had confirmed with her client that the defendant "still did not want to plea or admit to the facts."  The choice to plead guilty or to proceed to trial belongs solely to the defendant, and trial counsel properly left that decision to her. That the jury convicted the defendant is not evidence that trial counsel was ineffective.  See Commonwealth v. Norris, 483 Mass. 681, 690 (2019).  Trial counsel's strategy was reasonable, and "reasonableness does not demand perfection."  Commonwealth v. Kolenovic, 471 Mass. 664, 674 (2015).  It did not fall measurably below that which might be expected from an ordinary fallible lawyer.  See Saferian, 366 Mass. at 96.

In addition, the defendant cannot demonstrate prejudice. To meet her burden of establishing prejudice,

> "in the plea context, the defendant must show a reasonable probability that the result of the plea would have been more favorable than the outcome of the trial.  In particular, the defendant must demonstrate a reasonable probability that the prosecution would have made an offer,

that the defendant would have accepted it, and that the
court would have approved it." (Citations omitted.)

Marinho, 464 Mass. at 129.

As set forth supra, the Commonwealth did not offer a CWOF,
and perhaps more significantly, it was highly unlikely that the
defendant would have accepted such an offer.  A CWOF disposition
"requires that the defendant tender a plea of guilty (or admit
to sufficient facts) as precondition to such a disposition."
Commonwealth v. Powell, 453 Mass. 320, 324 (2009).  "An
'admission to sufficient facts' . . . means an admission to
facts sufficient to warrant a guilty finding."  Commonwealth v.
Duquette, 386 Mass. 834, 838 (1982).  Based on the defendant's
persistent and robust defense throughout this case that she had
been misidentified, she has failed to meet her burden to show
that she would have accepted a CWOF with a precondition of an
admission to sufficient facts.  We therefore conclude that the
defendant failed to demonstrate prejudice, or put differently,
that "better work might have accomplished something material for
the defense."  Commonwealth v. Satterfield, 373 Mass. 109, 115
(1977).

Finally, the trial judge did not err in ruling on the
motion for new trial without an evidentiary hearing.  "If the
theory of the motion, as presented by the papers, is not
credible or persuasive, holding an evidentiary hearing to have

the witnesses repeat the same evidence (and be subject to the prosecutor's cross-examination further highlighting the weaknesses in that evidence) will accomplish nothing." Commonwealth v. Goodreau, 442 Mass. 341, 348-349 (2004).

Judgments affirmed.

Order denying motion for new trial affirmed.