NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1121

COMMONWEALTH

vs.

HARRY H., a juvenile.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial, the juvenile was adjudicated delinquent on charges of assault and battery, in violation of G. L. c. 265, § 13A (a), and malicious destruction of property under $1,200, in violation of G. L. c. 266, § 127.  The judge entered a continuance without a finding for one year with respect to each charge.[2]  Once the juvenile successfully completed the administrative probationary period, both charges were dismissed.[3]

_____

[1] A pseudonym.

[2] See Commonwealth v. Magnus M., 461 Mass. 459, 463-464 (2012) (determining that G. L. c. 119, § 58, permits a Juvenile Court judge to continue a case without finding notwithstanding adjudication of delinquency).

[3] The Commonwealth contends that the juvenile's appeal is moot because the case was ultimately dismissed.  However,

On appeal, he claims that the judge abused her discretion by permitting the victim to make an in court identification, and by denying his request for a jury instruction that would have permitted the jury to consider his youth in determining delinquency. The juvenile also maintains that the prosecutor's opening statement constituted prejudicial error. We affirm.

Discussion. 1. In-court identification of the juvenile. Prior to commencement of the trial, the Commonwealth requested permission to ask the victim to make an in-court identification of his assailant, pursuant to Commonwealth v. Crayton, 470 Mass. 228, 243 (2014). The juvenile objected, and the judge allowed the Commonwealth's request for the parties to conduct a voir dire examination of the victim.

During voir dire, the victim testified that his close friend, Ashley, was in a relationship with the juvenile. The victim had not met the juvenile in person prior to the incident giving rise to the charges, and they did not go to the same school. However, the victim was aware of the defendant's relationship with Ashley because she had told him they were

because the juvenile has shown that "there remain genuine and serious collateral consequences" to the jury's adjudications of delinquency by virtue of such adjudications appearing on his record, among other things, we do not agree that the case is moot (citation omitted). Commonwealth v. Oswaldo O., 94 Mass. App. Ct. 550, 553 (2018). See Commonwealth v. Preston P., 483 Mass. 759, 768-769 (2020); Commonwealth v. Humberto H., 466 Mass. 562, 572-573 (2013).

2

dating and the victim followed Ashley on Instagram, a social media platform, where she had posted pictures of the juvenile on her "highlights."[4]  The victim viewed the juvenile on Ashley's highlights approximately four times.  In each of these highlights, the juvenile appeared to have a different hair color.  Notably, the fourth time the victim saw him, the juvenile had an unnatural "candy red" hair color.  The victim did not follow the juvenile on Instagram, but he knew his first name and Instagram handle.

As to the incident, the victim testified that Ashley asked to walk him home after school one day.  The victim felt this was suspicious, so he declined her invitation and went home alone using a different route.  When he turned onto his street, the juvenile came up from behind and started attacking him.  The juvenile then pulled down the mask he was wearing and said, "Don't talk shit again."  The juvenile threw the victim's phone on the ground and broke it before fleeing the scene with the victim's bicycle.[5]  The victim testified that he knew it was the

---

[4] As explained by the victim, "highlights" are posted stories that a user saves at the top of their Instagram profile.  Generally, others can only view a user's story at any time during a twenty-four period.  However, once a story is saved to a user's highlights, others can view the story at any time until the user deletes them from the user's profile.

[5] The juvenile was not charged with any crime related to the victim's bicycle.  Accordingly, the judge allowed the juvenile's

3

juvenile who attacked him because when the mask was pulled down, the victim could see the juvenile's face and red hair, which was similar to the "candy red" shade he previously had seen on Instagram.  The victim provided the juvenile's first name and Instagram handle to the two officers who arrived on scene. Based on this testimony, the judge allowed the Commonwealth's motion over the juvenile's objection, and the victim ultimately identified the juvenile at trial.

On appeal, the juvenile claims that the judge should not have permitted the victim to identify him in court, without having participated in a prior, out-of-court identification procedure, because there was no "good reason" to admit such evidence.  Crayton, 470 Mass. at 243.  We review the judge's ruling for an abuse of discretion.  See Commonwealth v. Collins, 92 Mass. App. Ct. 395, 397 (2017).  "[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made 'a clear error of judgment in weighing' the factors relevant to the decision, . . . such that the decision falls outside the range of reasonable alternatives" (citation omitted).  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

"Where an eyewitness has not participated before trial in an identification procedure, we shall treat the in-court

_____

request for the victim to not mention anything about the bicycle in front of the jury.

4

identification as an in-court show up, and shall admit it in evidence only where there is 'good reason' for its admission." Crayton, 470 Mass. at 241. "[T]here may be 'good reason' for the first identification procedure to be an in-court show up where the eyewitness was familiar with the [juvenile] before the commission of the crime, such as where a victim testifies to a crime of domestic violence." Id. at 242. "This is so because 'the witness is not identifying the [juvenile] based solely on his or her memory of witnessing the defendant at the time of the crime,' and therefore 'there is little risk of misidentification arising from the in-court show up despite its suggestiveness.'" Commonwealth v. Gil, 104 Mass. App. Ct. 124, 129 (2024), quoting Crayton, supra at 243. "Good reason" may also exist where the eyewitness had "an extensive and intensive opportunity to observe the [juvenile]." Commonwealth v. Fielding, 94 Mass. App. Ct. 718, 723 (2019). The juvenile bears the burden of proving that there is not "good reason" for the in-court identification. See Crayton, 470 Mass. at 243.

In Gil, we held that "good reason" existed for the trial judge to allow the eyewitness to make an in-court identification of the defendant, even though the eyewitness did not personally know the defendant. Gil, supra at 129-130. The eyewitness testified that he recognized the defendant because he "'had just seen her before . . . on videos and on [his family member's

Snapchat] stories,'[6] and in the past, he 'would see her out . . . in different businesses, different bars with [the family member]'" (footnote in original).  Id. at 127 & n.3.  The in-court identification was also supported by the eyewitness's interactions with the defendant during and immediately after the crime, including physically placing himself in such a way as to prevent further injury to the victim and escorting the defendant out of the apartment, which provided him with an "intensive opportunity to observe" the defendant.  Id. at 130, quoting Fielding, 94 Mass. App. Ct. at 723.  Thus, relying on all of these factors, the eyewitness's prior familiarity with the defendant's image from social media, his observations of her in social settings, and his opportunity to observe the defendant during and immediately after the crime, we concluded that the judge did not abuse his discretion in allowing the eyewitness to identify the defendant for the first time at trial.  Gil, supra.

While Gil also concerned an in-court identification based partially on the eyewitness viewing the perpetrator on another's social media posts, the facts before us present a closer

---

[6] "Snapchat is a social media application [that allows users] to publish . . . video recordings . . . [and] to share text, photographs, and video recordings, collectively known as 'snaps'" (citation omitted).  Commonwealth v. Carrasquillo, 489 Mass. 107, 108-109 (2022).  A 'story' is 'shared with a larger audience [than direct snaps], remain[s] visible for up to twenty-four hours, and can be continuously replayed' (citation omitted).  Id. at 109."

question as to whether the in-court identification was proper. Here, the victim had less prior familiarity with the juvenile and did not have such an "intensive opportunity to observe" him. Gil, 104 Mass. App. Ct. at 130, quoting Fielding, 94 Mass. App. Ct. at 723. The victim had not seen the juvenile in person before, and he only saw the juvenile's face briefly at the time of the incident, when his mask was pulled down. However, the victim nonetheless instantly recognized the juvenile. He had previously seen the juvenile's face four times on Ashley's Instagram highlights, and the juvenile had the same unnatural "candy red" hair color that he had in Ashley's most recent highlight.[7] The victim was able to provide the juvenile's first name and individual Instagram handle to the officers at the scene based on this prior familiarity. Because the victim did not identify the juvenile based solely on his memory of witnessing the juvenile at the time of the crime, there was little risk of misidentification arising from the in-court show up despite its suggestiveness. See Crayton, 470 Mass. at 243; Gil, 104 Mass. App. Ct. at 128, 130. Accordingly, we conclude that the judge did not abuse her discretion in permitting the victim to identify the juvenile in court.

---

[7] The fact that the victim felt it was suspicious that Ashley, the juvenile's girlfriend, asked to walk him home that day provides additional support for the identification.

2. Juvenile-specific jury instruction. The juvenile next claims that the judge abused her discretion in not instructing the jury, as requested, that they could consider his youth as a factor in determining delinquency. The juvenile proposed that the judge instruct the jury as follows:

> "This is a case where the accused is a child. The United States Supreme Court has determined, based on science and common sense, that children are different than adults in three significant ways: first, children lack maturity and a sense of responsibility; second, children are more susceptible to negative influences and outside pressures; and third, a child's character is not as full-formed as an adult.

> "Anyone who remembers being a teenager, who has been the parent or caretaker of a teenager, or who has observed adolescent behavior, knows intuitively what scientific research shows – that adolescents do not think or behave like adults; their brains are not yet fully developed in the areas that control impulses, ability to foresee the consequences of their actions, and to temper their emotions. These differences are characteristics that you may consider as you listen to the evidence in this case."

We discern no abuse of discretion. In Commonwealth v. Brown, 474 Mass. 576, 589 (2016), the Supreme Judicial Court reviewed a judge's denial of a similar request and determined that there was no error. In that case, the defendant requested an instruction which would have told the jury that "there was evidence that [the defendant] was a juvenile and therefore had less or a diminished capacity than an adult for making critical judgments." Id. Although the requested instruction at issue here provided that the jury "may consider" the differences

8

between juveniles and adults, like the instruction in <u>Brown</u>, "[t]he proposed instruction in this case essentially directed the jury to accept, as a matter of law, that all juveniles lack the capacity to form the requisite criminal intent to commit" an assault and battery and malicious destruction of property. <u>Id</u>. at 590. However, "although children may not have the maturity fully to appreciate the consequences of wrongful actions, 'that does not mean that a delinquent child lacks the ability to formulate the specific intent to commit particular wrongful acts.'" <u>Commonwealth</u> v. <u>Okoro</u>, 471 Mass. 51, 65 (2015), quoting <u>Commonwealth</u> v. <u>Ogden O.</u>, 448 Mass. 798, 804 (2007). We further note that the Legislature has determined that youth in the juvenile's age group are capable of forming the requisite intent to commit the charged acts, and "it is not the province of the court to sit and weigh conflicting evidence supporting or opposing a legislative enactment." <u>Okoro</u>, <u>supra</u>, quoting <u>Ogden</u>, <u>supra</u> at 805 n.6. The juvenile was not entitled to the requested instruction.

3. <u>The Commonwealth's opening statement</u>. Finally, the juvenile claims that it was error for the trial prosecutor to conclude his opening statement by stating, "Thank you, and I know that you'll make the right decision." The juvenile timely objected, so we review for prejudicial error. <u>Brown</u>, <u>supra</u> at 588. "[A] claim of improper [opening statement] by the

9

prosecutor must be judged in light of the entire [statement], the judge's instructions to the jury, and the evidence actually introduced at trial."  Commonwealth v. Kapaia, 490 Mass. 787, 794 (2022), quoting Commonwealth v. Barbosa, 477 Mass. 658, 669 (2017).

Here, the challenged statement was improper.  While the prosecutor did not explicitly state that the "right decision" would be to find the juvenile delinquent, the statement was susceptible of conveying that meaning.  "It is improper for a prosecutor to equate a guilty verdict with justice." Commonwealth v. Francis, 450 Mass. 132, 140 (2007).  The challenged statement is similar to certain remarks in closing statements that have been deemed impermissible.  See Commonwealth v. Degro, 432 Mass. 319, 329 (2000) ("a request that the jury do their 'job,' although not explicitly stating that this effort will result in a guilty verdict, is not permissible advocacy"); Commonwealth v. Deloney, 59 Mass. App. Ct. 47, 53 (2003) ("'Now is the time for justice.  Find him guilty' . . . creates too great a risk of misinterpretation by the jury that there is a duty to convict . . . or that proper performance of their function requires a guilty verdict" [citations omitted]); Commonwealth v. Cobb, 26 Mass. App. Ct. 283, 286 (1988) (reference to the jury's "duty," even "without an explicit statement that its exercise will result in a verdict

10

of guilty, should be held to pass the line of permissible advocacy").

However, "[t]he jury have the ability to discount hyperbole and other improper statements . . . and the trial judge's instructions are generally adequate to cure errors in the arguments" (citations omitted).  Commonwealth v. Santiago, 425 Mass. 491, 495 (1997).  "Thus, in many cases, arguments by the prosecutor, while in error, are not unduly prejudicial."  Id. This is one such case.

Here, the judge instructed the jury that opening statements are not evidence just prior to the Commonwealth's opening statement and in her final charge to the jury.[8]  We presume the jury followed these instructions.  See Commonwealth v. Silanskas, 433 Mass. 678, 702 (2001).  Additionally, "we presume the jury 'know that the prosecutor is an advocate' . . . and that they recognize arguments as 'advocacy and not statements of personal belief'" (citations omitted).  Commonwealth v. Valentin, 474 Mass. 301, 310 (2016), quoting Commonwealth v.

---

[8] The juvenile maintains that the judge should have reminded the jury that opening statements are not evidence or provided a curative instruction immediately following the improper statement, and that the failure to do so was unduly prejudicial. We believe, however, that the instructions the judge did provide to the jury were sufficient to overcome any undue prejudice.

Mejia, 463 Mass. 243, 254 (2012).  Thus, while the statement was made in error, it did not unduly prejudice the juvenile.

                              Adjudications of delinquency
                                affirmed.

                              By the Court (Vuono, Rubin &
                                Walsh, JJ.[9]),

                              Clerk

Entered:  September 19, 2024.

---

[9] The panelists are listed in order of seniority.

12